# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 15-1451V
(Not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
CAILEN MCKOWN,                        *
                                      *    Chief Special Master Corcoran
                                      *
                                      *    Filed: December 18, 2019
                     Petitioner,      *
       v.                             *
                                      *    Attorney's Fees and Costs;
SECRETARY OF HEALTH                   *    Reasonable Basis; Unreliable Expert
AND HUMAN SERVICES,                   *    Testimony; Postural Orthostatic
                                      *    Tachycardia Syndrome.
                                      *
                     Respondent.      *
                                      *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Clifford John Shoemaker*, Shoemaker, Gentry & Knickelbein, Vienna, VA, for Petitioner.

*Debra A. Filteau Begley*, U.S. Dep't of Justice, Washington, D.C., for Respondent.

### DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

On December 1, 2015, Cailen McKown filed a Petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioner alleged that she developed Postural Orthostatic Tachycardia Syndrome ("POTS") and skin rashes (including eczema) after receiving two doses of the Human Papillomavirus ("HPV") vaccine on March 20, 2013, and September 3, 2013, respectively, along with the Hepatitis A vaccine that she received

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

on March 20, 2013. Pet. at 1–2 (ECF No. 1). I issued a decision denying entitlement in the case on July 15, 2019 (ECF No. 71) and no appeal was taken.

On October 10, 2019, Petitioner filed a motion seeking a final award of attorney's fees and costs. Mot. for Final Attorney's Fees and Costs (ECF No. 75) ("Mot."). Ms. McKown requested $115,927.00 in attorney's fees. Mot. at 1. As the invoice attached to the Fees Motion demonstrates, Mr. Clifford Shoemaker, Esq. worked on the matter between April 2015 and the present date, along with two other attorneys from this firm: Ms. Réene Gentry, Esq. and Ms. Sabrina Knickelbein, Esq. Mot. at 5–36. Petitioner also requests costs in the total sum of $71,804.82[3], reflecting filing fees, postage, the work of two experts who consulted on the matter and provided expert reports and testimony at hearing, along with other miscellaneous personal and unreimbursed expenses including dog care and lost wages on behalf of Ms. McKown's mother. Mot. at 1–4.

Respondent reacted to the fees request on October 24, 2019. *See* Response, dated Oct. 24, 2019 (ECF No. 76). He indicates in his Response that he is satisfied that the statutory requirements for an attorney's fees and costs award are met in this case, but defers to my discretion the calculation of a proper amount to be awarded. *Id.* at 2–3.

Now, having had the opportunity to review all filings in light of the medical record, I hereby (and for the reasons set forth below) GRANT IN PART AND DENY IN PART Petitioner's motion.

**Analysis**

I.   *Petitioner's Claim had Reasonable Basis*

Vaccine Program attorneys are not automatically entitled to a fees award in unsuccessful cases like this one. Rather, such a claim must be shown to have possessed "reasonable basis"—meaning that it had some objective basis upon which to proceed. *See, e.g., Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289–90 (noting that a special master's reasonable basis analysis should include an examination of objective factors including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation").

Here, I find Petitioner's claim had sufficient objective basis to entitle her to a fee award under the applicable reasonable basis analysis. Claims that vaccines can cause POTS are common enough in the Program to have facial credibility. *See Wright v. Sec'y of Health & Human Servs.*, No. 15-1436V, 2018 WL 6828711, at *2–3 (Fed. Cl. Spec. Mstr. Nov. 27, 2018). Even though this

---

[3] In her fees application, Petitioner requested reimbursement of costs totaling a lower sum—$69,232.31—on behalf of the attorneys of Shoemaker, Gentry & Knickelbein. Mot. at 1. A review of the submitted expenses and supporting documentation revealed, however, that the total costs incurred by Mr. Shoemaker, Ms. Gentry, and Ms. Knickelbein total $70,595.96. Mot. at 37. This in combination with the total costs personally incurred by Petitioner—a sum of $1,208.86—amounts to $71,804.82 in total costs expended.

2

claim was unsuccessful (due primarily to the lack of reliable expert and evidentiary support for Petitioner's proposed theory of causation), it was based on evidence, including diagnostic test results and treater support, of POTS following vaccine administration. There was enough evidence in the record to support bringing the claim, and Respondent for his part does not otherwise contest reasonable basis.

II.   *Calculation of Attorney's Fees*

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the *Davis* exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Mr. Shoemaker, Ms. Gentry, and Ms. Knickelbein are the three named partners of a law firm, located in Vienna, Virginia, a jurisdiction that has been deemed "in forum." *See Jaffri v. Se'y of Health & Human Servs.*, No. 13-484V, 2016 WL 7319407, at *5–6 (Fed. Cl. Spec. Mstr. Sept. 30, 2016). They are therefore entitled to the forum rates established by the Office of Special Masters for the majority of the work performed in this matter.[4]

While I find the requested rates reasonable for the *attorney* work performed in this matter, some reductions are necessary to account for administrative, *non-attorney* tasks that were performed by the attorneys rather than administrative staff. Tasks that have previously been deemed administrative in nature by other special masters include ordering medical records, scheduling status conferences, as well as preparing and filing exhibits. *See generally Abbott v. Sec'y of Health & Human Servs.*, No. 10-485V, 2017 WL 2226614 (Fed. Cl. Spec. Mstr. Apr. 26,

---

[4]   *See* Office of Special Masters Attorneys' Hourly Rate Fee Schedule: 2015–2019, https://www.uscfc.uscourts.gov/node/2914 (last accessed on Dec. 13, 2019).

3

2017), *mot. for rev. denied*, 2017 WL 5494614, 135 Fed. Cl. 107 (2017) (finding that certain tasks, such as scheduling status conferences, organizing exhibits, preparing compact discs, revising a short motion after an attorney's review, and filing documents, to be clerical in nature, and therefore, not compensable at an attorney rate). When an attorney bills for paralegal-level work at an attorney rate, the special master may reduce the requested rate to that of a paralegal. *See, e.g.*, *Valdes v. Sec'y of Health & Human Servs.*, No. 99-310V, 89 Fed. Cl. 415 (2009), *granting in part, denying in part mot. for rev.* 2009 WL 1456437 (Fed. Cl. Spec. Mstr. Apr. 30, 2009) (finding that Ms. Knickelbein should have been compensated at a paralegal rate for time spend obtaining medical records).

Throughout the course of this litigation, both Mr. Shoemaker and Ms. Knickelbein[5] performed numerous tasks that can only be categorized as administrative in nature. Mot. at 5–36 (detailing tasks such as ordering medical records, reviewing and approving expenses, scheduling status conferences, in addition to preparing and filing exhibits). In sum, Mr. Shoemaker allocated seven and a half hours to administrative tasks between 2015–2019. *Id.* at 5–22. During the same timeframe, Ms. Knickelbein committed nearly seven hours to similarly clerical endeavors. *Id.* at 23–34. While such tasks may have been necessary to develop and resolve this matter, they are nonetheless clerical in nature and may only be reimbursed at the applicable paralegal rates—resulting in a total deduction of $2,195.30 from the amount requested for Mr. Shoemaker and a total deduction of $1,590.30 from the amount requested for Ms. Knickelbein. Taking these deductions into account, the resulting sum of attorney's fees to be reimbursed is $112,141.40.

III.    *Calculation of Costs*

        A.    *Non-litigation Associated Expenditures are not Compensable*

I will next turn to costs. Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992); *Presault v. United States*, 52 Fed. Cl. 667, 670 (Fed. Cl. 2002). When petitioners fail to carry their burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner requests $71,804.82 in overall costs. Mot. at 1. This amount includes the cost of postage, expert consultation fees, and medical record requests. Mot. at 3, 37. While these costs are

---

[5] Ms. Knickelbein's continued practice of performing paralegal tasks, but billing at an attorney rate, is of note given previous admonishments by other special masters. *See Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *20–22 (Fed. Cl. Spec. Mstr. June 15, 2009), *mot. for rev. denied*, 106 Fed. Cl. 600 (withdrawn), *aff'd*, 406 Fed. Appx. 479 (Fed. Cir. 2011) (finding that hours expended by Ms. Knickelbein on organizational tasks were compensated at a paralegal rate, not an attorney rate); *Valdes*, 2009 WL 1456437, at *4; *Gabbard v. Sec'y of Health & Human Servs.*, No. 99-415V, 2009 WL 1456434 (Fed. Cl. Spec. Mstr. Apr. 30, 2009) (compensating Ms. Knickelbein's non-attorney work at a paralegal rate).

typically incurred in the Program and are compensable, other miscellaneous out-of-pocket expenses incurred by Petitioner, such as lost wages and pet care expenses incurred while attending a hearing, are not. *See Solomon v. Sec'y of Health & Human Servs.*, No. 14-748V, 2016 WL 8257673, at *3 (Fed. Cl. Spec. Mstr. Oct. 27, 2016) (noting that "[a]lthough not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as fees" (citing *Perriera*, 27 Fed. Cl. at 34)); *see also Gabbard*, 2009 WL 1456434, at *8 (denying reimbursement for clothing the petitioner had purchased in anticipation of attending a hearing). The petitioner bears the burden of substantiating and establishing the reasonableness of costs expended with "supporting documentation such as receipts, invoices, canceled checks, etc." *Solomon*, 2016 WL 8257673, at *8 (quoting *Ceballos v. Sec'y of Health & Human Servs.*, No. 99-097V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004)); *see also Gabbard*, 2009 WL 1456434, at *8 (noting that "[w]hen petitioners fail to meet their burden of proof, such as by not submitting appropriate documentation, special masters have refrained from awarding compensation").

Though petitioners may choose to make certain financial sacrifices in order to prepare for, and attend hearings, only such costs that are necessary, and directly related to participation in the litigation, such as travel expenses to and from the hearing location, hotel costs, and exhibit shipping costs (just to name a few), are compensable. *See, e.g.*, *Jaffri*, 2016 WL 7319407, at *10 (finding that costs associated with hotel rooms, airfare, and other travel related expenses were reasonable and eligible for reimbursement); *but see Gabbard*, 2009 WL 1456434, at *8 (denying reimbursement for expenses that were not necessary).

Here, Petitioner's requests for reimbursement of non-travel personal costs associated with her family's appearance at the hearing are not appropriately sought from the Program. Petitioners should and do routinely receive reimbursement for their travel to Washington, D.C. for hearing, but not other costs indirectly incurred in that travel. Moreover, even if the costs requested herein were categorically compensable, Petitioner has failed to offer any evidence to substantiate the costs. She has not filed a receipt documenting her pet care expenses, nor has she filed any documentation related to lost wages. Without substantiating evidence, Petitioner has failed to meet her burden in establishing the reasonableness of these costs, and she is therefore not entitled to reimbursement for costs associated with pet care or lost wages. *See id.* Discounting these expenses—a deduction totaling $348.00—from the requested costs results in a total award amount of $860.86 for costs incurred by Petitioner. All other non-expert litigation costs are awarded.

      B.    *Costs Associated with Unacceptable Experts are Discounted*

Of the $71,804.82 in overall costs, Petitioner requests $38,325.00 for work performed by Dr. Judy Mikovits, Ph.D. Mot. at 58–59. She also requests an additional $585 for travel expenses and $1,064.06 in hotel expenses Dr. Mikovits incurred to attend and testify at the hearing in this matter. *Id.* at 37, 59. For the reasons set forth below, I reduce the reimbursement of costs for Dr.

Mikovits' work on this matter by sixty percent, but award all requested costs related to her travel and hotel stay in full.

Having heard Dr. Mikovits testify at trial, I can reasonably conclude that there were significant problems with her appearance that justify a fairly large reduction in the fees she should receive. First, she had glaring deficiencies with her professional history that in many other legal contexts would likely have led to her not being permitted to testify based on *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 594–96 (1993); *see Cedillo v. Sec'y of Health & Human Servs.*, 617 F.3d 1328, 1339 (Fed. Cir. 2010) (citing *Terran v. Sec'y of Health & Human Servs.*, 195 F.3d 1302, 1316 (Fed. Cir. 1999)). Specifically, Dr. Mikovits is not a medical doctor. She did not attend medical school and therefore has no direct experience treating skin diseases or autonomic disorders. Trial Transcript ("Tr.") at 247. While that alone is not enough to discount her opinion in the matter, other, more alarming elements of her professional history are. Dr. Mikovits was accused by a former employer of stealing laboratory materials—an allegation that led to her arrest and firing. *Id.* at 218, 265–66. In addition, she published a paper in *Science* that was later retracted because the results could not be replicated. *Id.* at 216, 258–59. Nevertheless, she continues to reference the article on her consulting website without disclosing the retraction. *Id.* at 265. Additionally, she has not conducted scientific research since 2012, instead focusing her efforts on consulting work. Curriculum Vitae, filed as Ex. 26 (ECF No. 18-3) ("Mikovits CV") at 1. Even her consulting work, however, has been labeled as "substandard." *See McCabe v. Sec'y of Health & Human Servs.*, No. 13-570, 2019 WL 4201571, at *2 (Fed. Cl. Spec. Mstr. Aug. 2, 2019) (noting that "Ms. Mikovits has since developed a pattern of submitting substandard work and her credentials as an expert have been called into question."); *Dominguez v. Sec'y of Health & Human Servs.*, No. 12-378, 2018 WL 3028975, at *5–8 (Fed. Cl. Spec. Mstr. May 25, 2018) (finding that future reliance on Dr. Mikovits may not be reasonable given the poor quality of her work, her mischaracterizations, misdirection, and expression of opinions outside of her qualifications).

In addition to her lackluster professional reputation (which inherently tainted the overall reliability of her opinion), Dr. Mikovits's personal opinions relating to vaccines and the Vaccine Program are also reason to question her credibility. She has publicly espoused opinions disputing the safety and value of vaccines and has implied a link between vaccines and autism. Tr. at 250–51, 255–58. She has also collaborated with an anti-vaccination publisher and co-author, and regularly speaks at the "AutismOne" conference. *Id.* Additionally, she has supported a ban on all HPV vaccines and attacked the Vaccine Program as biased. *Id.* at 255.

Finally (and perhaps most importantly), I find that Dr. Mikovits's testimony (and indeed her overall opinion) was largely unhelpful in resolving the claim in this case. Although it is true that the topic upon which her opinion centered was complex, involving a great deal of molecular biology and difficult scientific concepts, she presented an opinion that was in retrospect garbled, confusing, and ultimately shed almost no light on the question of whether the Petitioner's POTS and eczema were vaccine-caused. Even Respondent's experts, well-versed as they are in the same topics, could not make head or tail from her opinion. Tr. at 455–57.

Petitioner was certainly on notice of the danger of relying on Dr. Mikovits's opinion (and especially of calling her at trial as a witness). In May 2018, just four months prior to the hearing in this matter, Mr. Shoemaker was made aware that future reliance on Dr. Mikovits may not be reasonable given the poor quality of her work in *another* matter before a *different* special master. *Dominguez*, 2018 WL 3028975, at *5–8. And in fact, shortly thereafter, on July 2, 2018, Petitioner's counsel began consulting with a second expert—Dr. Carlo Tornatore, M.D. in preparation for the September 2018 hearing in this matter. Mot. at 63. This series of events underscores Counsel's own misgivings about relying on Dr. Mikovits's testimony alone given other special masters' reception of her work.

I myself had not had the opportunity to evaluate her work as a testifying witness prior to this case, and out of respect for Counsel's autonomy in developing trial strategy I reserved further judgment of Dr. Mikovits's credibility for hearing. Having now reviewed her expert reports and having heard her testimony at hearing, however, I find that her work was woefully inadequate in this matter and her testimony not credible. Therefore, I reduce the requested costs associated with Dr. Mikovits' work in this case by *sixty percent*—a deduction of $22,995.00 from the requested amount of $38,325.00 for a total reimbursement amount of $15,330.00. I will allow costs associated with Dr. Mikovits's airfare and hotel—an amount totaling $1,649.06—to be reimbursed in full, though Counsel is on notice that I will not entertain Dr. Mikovits as an expert in the future.

By comparison, I note that Dr. Tornatore's work and testimony in this matter did not suffer from the same deficiencies that plagued that of Dr. Mikovits. He was a qualified witness and provided credible testimony in support of Petitioner's theory. Though not enough to carry Petitioner's burden, Dr. Tornatore's work in this matter did assist in the resolution of the case, and he is therefore entitled to full reimbursement of his fees.

## CONCLUSION

I hereby GRANT IN PART AND DENY IN PART Petitioner's motion for attorney's fees and costs. An award of **$160,603.22** (representing $112,141.40 in attorney's fees, plus $48,461.82 in costs) shall be made in the form of a check payable jointly to Petitioner and Petitioner's counsel, Mr. Clifford Shoemaker, Esq.

|  | **Requested Amount** | **Amount Awarded** | **Difference** |
|---|---|---|---|
| **Clifford Shoemaker, Esq.** | $81,858.00 | $79,662.70 | $2,195.30 |
| **Renée Gentry, Esq.** | $21,572.50 | $21,572.50 | $0.00 |
| **Sabrina Knickelbein, Esq.** | $12,496.50 | $10,906.20 | $1,590.30 |
| **Costs** | $71,804.82 | $48,461.82 | $23,343.00 |
| **Total** | $187,731.82 | **$160,603.22** | $27,128.60 |

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court SHALL ENTER JUDGMENT in accordance with the terms of this decision.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master